UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

13391 BROADWAY LLC and BETTER
BUFFALO PROPERTIES LLC,

                    Plaintiffs,                              **DECISION AND ORDER**

          v.                                                       19-CV-882S

VILLAGE OF ALDEN,

                    Defendant.

## I.  INTRODUCTION

In this action, Plaintiffs 13391 Broadway LLC and Better Buffalo Properties LLC seek damages from the Village of Alden for violating their rights under the United States Constitution and New York law when the Village interfered with prospective purchasers of Alden Landings, a mobile home park owned by Plaintiffs, and when the Village later denied a renewal of Plaintiffs' license to operate Alden Landings. Before this Court is the Village's motion to dismiss for lack of subject-matter jurisdiction and for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12 (c). For the following reasons, the Village's motion will be granted in part and denied in part.

## II.  BACKGROUND

This Court assumes the truth of the following factual allegations contained in the complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

In considering the Village's motions, this Court will consider the allegations in the

1

complaint, the text of all relevant versions of Alden Village Code § 131, and the two purchase agreements referred to in the complaint, which this Court considers to be incorporated by reference in the complaint.[1]

In the complaint, Plaintiffs refer to themselves collectively as "Better Buffalo." Defendants move to dismiss 13391 Broadway LLC for lack of standing, because Plaintiffs refer only to "Better Buffalo" as a collective plaintiff throughout most of the complaint, and refer specifically to 13391 Broadway LLC only twice. This Court addresses this issue below, but for narrative purposes here assumes that both plaintiffs are included whenever the complaint refers to an entity called "Better Buffalo."

## A.    Better Buffalo's purchase of Alden Landings

Better Buffalo is the owner of Alden Landings, a mobile home park in the Village of Alden. (Complaint, Docket No. 1, ¶¶ 1, 19.) The Village of Alden Code requires an operator of a mobile home park to have a license. (Id., ¶ 11.) Alden Village Code § 131-9 states that to receive a license, an applicant must gain approval from the Village code enforcement officer, the Village superintendent of public works, the Village engineer, the Erie County Department of Health, and the Village Board of Trustees. (Id., ¶ 13.)  The same procedure is required every year for a license to be renewed.  (Id., ¶ 12.) In addition, before a license is approved or renewed, the Board of Trustees must hold a public hearing to accept comments for or against the approval or renewal. (Alden Village Code § 131-9(F)(1), Docket No. 15-9 at p. 12.)

---

[1] A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Before Better Buffalo purchased Alden Landings, Village Code Enforcement Officer Joe Czechowski and Village Superintendent of Public Works Keith Sitzman identified a number of issues with Alden Landings, including drainage issues and the condition of the paving. (Id., ¶ 16.) Despite these concerns, the Village granted a license to the then-owner of Alden Landings in 2013. (Id.) In correspondence dated July 24, 2014, Code Enforcement Officer Czechowski again notified the then-owners of Alden Landings of inadequate drainage and of street-grading concerns, and informed them that these issues would be "further evaluated during the next review cycle." (Id., ¶ 17.) Despite these issues, the Village granted a license to the then-owner in 2014. (Id., ¶18.)

Better Buffalo asserts that, "at all relevant times, there were no significant drainage issues at Alden Landings. Areas of standing water would form only on the few occasions when significant rainfall occurred. Any standing water was generally no deeper than an inch, and would dissipate within days." (Id., ¶ 22.)

Better Buffalo purchased Alden Landings in May 2015 for $945,000. (Id., ¶ 19.)

**B.    Village Enforcement Efforts**

The Village issued a mobile home park license to Better Buffalo on September 1, 2015. (Id., ¶ 21.) On August 24, 2016, the Village added a proposed modification to Better Buffalo's license, stating that a plan to fully address drainage issues should be submitted by September 30, 2016, with work to be completed before December 31, 2016. (Id., ¶ 23). The Village then issued a license to Better Buffalo on September 1, 2016, subject to the modification (Id., ¶ 24.)

At a meeting on September 26, 2016, Better Buffalo informed Village Mayor Michael Manicki, Code Enforcement Officer Czechowski, and Public Works

3

Superintendent Sitzman that it was exploring drainage options and also considering redeveloping Alden Landings. (Id., ¶¶ 25-26.) The Village officials expressed their preference for redevelopment, and Better Buffalo began a feasibility analysis for redevelopment. (Id., ¶¶ 27-28.)

At some point, the Village modified Better Buffalo's license to require Better Buffalo to submit a plan to address drainage issues by March 31, 2017, with a work completion date of May 31, 2017. (Id., ¶ 29.)  In January 2017, after conducting its study, Better Buffalo informed the Village that redevelopment of Alden Landings was not feasible, but that it was still exploring options to ameliorate drainage. (Id., ¶ 30.)  Village officials were unhappy with this response and threatened to "shut down" Alden Landings if Better Buffalo did not redevelop it. (Id., ¶¶ 31-33.)

## C.    Potential Purchasers

Better Buffalo began to market Alden Landings to potential purchasers in 2017. On January 31, 2017, 13391 Broadway entered into a sales contract with a potential purchaser to sell Alden Landings for $780,000. (Id., ¶ 38.) The agreement states: "PURCHASER may cancel this Agreement for any reason, at the sole discretion of PURCHASER, within 45 days after receiving all documents and materials from SELLER." (Docket No. 21-2 at p. 4.)

At some point, the purchaser contacted the Village regarding Alden Landings. The Village told the purchaser that it would not issue a mobile home park license to Alden Landings because of the drainage issues there. (Complaint, Docket No. 1, ¶ 40.)  Better Buffalo alleges that the Village made this statement with an intent to harm Better Buffalo. (Id., ¶ 41.) The purchaser canceled the contract sometime after it contacted the Village.

4

(Id., ¶ 39.) On or about May 30, 2017, 13391 Broadway entered another contract to sell Alden Landings for $780,000. This contract also had a 45-day due diligence period. This purchaser, too, canceled its contract after contacting the Village and being informed that the Village would not issue a mobile home park license for Alden Landings because of the drainage issue there. (Id., ¶¶ 43-44.)

On September 7, 2017, the Village held a special meeting to discuss the mobile home park license for Alden Landings. (Id., ¶ 46.) The main issues of concern were the drainage and street conditions at Alden Landings. (Id.) The Village conditionally approved the license for Alden Landings for the period from September 1, 2017, through November 9, 2017, on the condition that Better Buffalo complete a Drainage Improvement Plan ("the Plan") by October 31, 2017. (Id., ¶ 47.) The Plan required Better Buffalo to run a pipe under Broadway Street and obtain an easement for a pipe from an adjacent property owner. (Id., ¶ 49.) Better Buffalo tried to obtain the needed easement from the properties neighboring Alden Landings but was unable to do so. (Id., ¶ 50.) Better Buffalo informed the Village that it could not carry out the Plan because it could not obtain the necessary easement. (Id., ¶ 51.) Better Buffalo was working to improve drainage at Alden Landings during this time. (Id., ¶ 52.) Better Buffalo incurred "significant costs" trying to comply with the conditions the Village set. (Id., ¶ 90.) After Better Buffalo informed the Village that it could not carry out the Plan, the Village "revoked" the mobile home license for Alden Landings. (Id., ¶ 53.) On December 4, 2017, the Village issued a criminal information against Better Buffalo for operating a mobile home park without a valid license. (Id.)

## D.   Code Amendment and Sale of Alden Landings

The complaint does not specify what happened between December 4, 2017, and

October 25, 2018. On October 25, 2018, the Village amended Village Code Chapter 131. (Id., ¶ 54.) The new version of the Code required driveways and roadways in mobile home parks to be suitably graded and maintained to provide adequate drainage and stated that mobile home parks were not to be subject to hazards such as "improper or inadequate drainage." (Id., ¶ 56.)[2] The consequence of a license expiring is that the premises must cease to be used, and all homes must be removed within 20 days. (Id., ¶ 62.) No version of the Code contains a definition of drainage, a standard for determining when drainage is "adequate," or a process for challenging a determination that drainage is "inadequate." (Id., ¶¶ 57-59.)

On or around November 1, 2018, Better Buffalo sold Alden Landings for $425,000. (Id., ¶ 64.) The Village approved a new mobile home park license for the new owners of Alden Landings on January 10, 2019, to run through August 31, 2019. (Id., ¶ 65.) There had been no change in the drainage issues at Alden Landings when the license was issued to the new owner. (Id.) There is only one other mobile home park in Alden. (Id., ¶ 60.) The Village has not imposed drainage conditions on the license of that mobile home park. (Id., ¶ 61.)

## III.  DISCUSSION

Better Buffalo seeks damages from the Village, alleging that the Village is liable to it for tortiously interfering with its prospective business relations. Better Buffalo seeks damages and a declaratory judgment that Village Code § 131 is unconstitutional because it is unconstitutionally vague and susceptible to arbitrary enforcement.  It also claims that

---

[2] Prior versions of the Code provide that "[e]ach mobile home lot shall be suitably graded to provide adequate drainage." § 131-9(M), see Docket No. 15-9 at p. 8, Docket No. 15-8 at p. 12.

the Village arbitrarily refused to renew its license, in violation of its Fourteenth Amendment procedural and substantive due process rights. Better Buffalo also seeks damages because the Village treated it differently from prior and subsequent owners of Alden Landings, in violation of its Fourteenth Amendment equal-protection rights.

The Village moves to dismiss Better Buffalo's complaint for lack of subject-matter jurisdiction as to 13391 Broadway and for failure to state a claim upon which relief can be granted as to both plaintiffs, under Rules 12 (b)(1) and 12 (c) of the Federal Rules of Civil Procedure.

### A.      Rule 12 (b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, and also on grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must consider the Rule 12(b)(1) motion first. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 496 F. App'x 131 (2d Cir. 2012) (citing Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

"A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1)." SM Kids, LLC v. Google LLC, 963 F.3d 206, 210 (2d Cir. 2020) (citing Carter v. HealthPort Techs. LLC, 822 F.3d 47, 56 (2d Cir. 2016)). "When a motion under Rule 12(b)(1) is based solely on the complaint and the attached exhibits, the plaintiff bears no

evidentiary burden, and the district court must evaluate whether those documents allege facts that plausibly suggest that the plaintiff has standing to sue." Id.

### B.     Rule 12 (c)

Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994)).

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.; Fed. R. Civ. P. 8(a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context-specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away.  See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

## C.    Standing of 13391 Broadway LLC

The Village argues that 13391 Broadway LLC should be dismissed as a party

pursuant to Federal Rule of Civil Procedure 12 (b)(1) because it lacks standing to bring a claim. The Village points to the fact that throughout the complaint, the plaintiffs are referred to collectively as "Better Buffalo," with no specification of whether one or both plaintiffs had the ownership interest in Alden Landings, or had Chapter 131 of the Village Code enforced against it. The Village thus argues that 13391 lacks standing because it has not alleged an injury in fact to itself. Better Buffalo argues that because it stated that the parties were to be "collectively" known as "Better Buffalo," any allegations referring to "Better Buffalo" refer to both plaintiffs.

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). To have Article III standing, "the plaintiff [must have] 'alleged such a personal stake in the outcome of the controversy' as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." Id. at 498–99 (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)). A plaintiff claiming such a stake must establish (a) that it has sustained an "injury in fact" which is both "concrete and particularized" and "actual or imminent," (b) that the injury was in some sense caused by the opponent's action or omission; and (c) that a favorable resolution of the case is likely to redress the injury. Cortlandt St. Recovery Corp. v. Hellas Telecommunications, 790 F.3d 411, 417 (2d Cir. 2015) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). These elements form an "irreducible constitutional minimum" without which a federal court may not proceed to the merits of a claim. Cortlandt St., 790 F.3d at 417.

10

This Court agrees with the Village that the complaint lacks clarity as to the respective interests of the two named plaintiffs in this action. But reading the complaint in a light favorable to Plaintiffs, the nonmoving parties, it will assume that the term "Better Buffalo" as used in the complaint refers to both 13391 Broadway LLC and Better Buffalo LLC, unless otherwise specified. Thus, it assumes that both parties purchased Alden Landings in May 2015 (Complaint, ¶ 19), and that both applied for and were denied a license renewal (id., ¶¶ 47, 53), but that only 13391 Broadway entered into the two sales contracts with potential purchasers (id., ¶¶ 38, 42). 13391 Broadway's interests have been sufficiently alleged by inclusion in the collective term Better Buffalo, and by the specification of its contracts with potential purchasers. The Village's motion to dismiss on this basis will therefore be denied.

**D.    Municipal Liability**

The Village argues that Better Buffalo has failed to state a claim against it, because Better Buffalo has not established that any violations resulted from a municipal policy, custom, or practice. Better Buffalo argues that the acts of the mayor, code enforcement officer, and superintendent of public works in falsely alleging drainage issues and wrongfully denying Better Buffalo a license are fairly attributable to the Village.

To prevail on a claim against a municipality under § 1983, a party must establish, as a threshold matter, that a "municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

A municipality can be sued directly if it is alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22, 108 S. Ct. 915, 923, 99 L. Ed. 2d 107 (1988) (quoting Monell, 436 U.S. at 690)). A municipality can be held liable for a single act "tailored to a particular situation not intended to control decisions in later situations," as long as the act was directed by an official policymaker. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 406, 117 S. Ct. 1382, 1389, 137 L. Ed. 2d 626 (1997); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298–99, 89 L. Ed. 2d 452 (1986). Liability also attaches "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Praprotnik, 485 U.S. at 121-122.

Here, Better Buffalo alleges that the actions that harmed it were taken by the Village's Mayor, the Village's Code Enforcement Officer, and the Village's Superintendent of Public Works. Better Buffalo argues that the actions of these officials are fairly attributable to the Village because the Village grants them the decisionmaking authority to grant or deny licenses. (Docket No. 20 at p. 39.)

At this stage, accepting Better Buffalo's allegations as true, this Court finds that Better Buffalo has sufficiently alleged municipal liability based on the official acts taken by those with decisionmaking authority.

### E. Better Buffalo's claim for tortious interference with prospective business relations fails.

The Village argues that Better Buffalo has not stated a claim for tortious interference with prospective business relations because (a) Better Buffalo has not alleged any malice or wrongdoing on the part of the Village, (b) the Village is immune to liability for its alleged interference, and (c) Better Buffalo has failed to meet New York's

notice-of-claim requirements. Better Buffalo argues that it has sufficiently alleged malice on the part of the Village, that the Village does not have immunity from suit, and that its notice of claim was timely.

### 1. Legal Rules

Under New York law, a claim for tortious interference with prospective business relations, or prospective economic advantage, must allege that: "(1) [the plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Pub. Free Will Corp. v. Verizon Commc'ns Inc., No. 15CV6354RRMJO, 2017 WL 1047330, at *5 (E.D.N.Y. Mar. 17, 2017) (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003)). These same standards apply to interference with contracts that are terminable at will. Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 192, 406 N.E.2d 445 (1980).

The conduct that constitutes interference with prospective business relations is directed not at the plaintiff itself, but at the third party with which the plaintiff has or seeks to have a relationship. Carvel at 192. See also G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 768 (2d Cir. 1995) (claim dismissed because alleged conduct was not directed at plaintiff's customers); Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("(U)nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities towards the third party . . . "); Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 167-168 (S.D.N.Y. 1998) (finding that claim failed because

"defendants' alleged conduct concededly was not directed towards any third party with whom [plaintiff] had an existing or prospective business relationship")

Here, Better Buffalo alleges that the Village tortiously interfered with its prospective business relations by (a) telling the first and second prospective purchasers that it would not issue a license to Alden Landings due to drainage issues, (Complaint, ¶¶ 40, 44), (b) "repeatedly interfering" with other attempts to sell Alden Landings to unspecified purchasers up to November 1, 2018 (Complaint, ¶ 37, see also Docket No. 20 at p. 19), and (c) requiring Better Buffalo to complete the Plan despite the Village's knowledge of its unfeasibility, withholding the mobile home park license from Alden Landings, and revising the Code. (Complaint, ¶ 69.)

### 2. Better Buffalo fails to state a claim regarding the Village's denial of a license renewal.

As an initial matter, this Court finds that Better Buffalo does not state a claim for tortious interference regarding the Village's denial of a renewal of its mobile home park license. As noted above, tortious interference with prospective business relations involves activities directed towards a third party. Piccoli, 19 F. Supp. 2d at 167-168. The Village's denial of a license to Better Buffalo did not involve any third-party contact, and thus Better Buffalo does not state a claim based on this conduct.

### 3. Better Buffalo failed to comply with the requirements of New York General Municipal Law § 50-e and § 50-i.

The Village argues that Better Buffalo's tortious interference claim should be dismissed because Better Buffalo did not comply with the requirements of General Municipal Law 50-e and 50-1. Better Buffalo argues that it timely filed its notice within 90 days of the "injury" it suffered, which, it argues, was the sale of Alden Landings on

November 1, 2018, at a price lower than those offered in the two prospective contracts.

New York General Municipal Law § 50-e provides, in relevant part, that a party seeking to hold a municipality liable in tort must file a notice of claim within 90 days after the "claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). General Municipal Law § 50-i requires that a party's action or special proceeding against a municipality be commenced within one year and 90 days "after the happening of the event upon which the claim is based." N.Y. Gen. Mun. Law § 50-i(1)(c).

In federal court, state notice-of-claim rules apply to state-law claims. Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999) ("Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations."). Failure to properly file a notice of claim as specified in § 50-e of New York General Municipal Law "ordinarily requires a dismissal for failure to state a cause of action." Id. at 794 (internal citations omitted); Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 62, 484 N.Y.S.2d 533, 473 N.E.2d 761 (1984).

The timeliness of Better Buffalo's notice of claim, filed on January 29, 2019, hinges on the date its claim arose. The Village argues that any claim arose, at the latest, at the end of the due-diligence period of the contract Better Buffalo entered on May 30, 2017. (Docket No. 15-10 at p. 9.) The Village argues that Better Buffalo's January 29, 2019, notice of claim was therefore untimely. Better Buffalo argues that its claim arose on November 1, 2018, when it sold Alden Landings for less than half its full market value. (Docket No. 20 at p. 18.) Better Buffalo also argues that its complaint alleges other interference by the Village throughout the period leading up to November 1, 2018.

In a claim for tortious interference with prospective business relations, the injury is

to the plaintiff's potential business relationship with a third party. Thome v. Alexander & Louisa Calder Found., 70 A.D.3d 88, 890 N.Y.S.2d 16 (App. Div. 1st Dep't, 2009). A claim accrues when "the defendant performs the action (or inaction) that constitutes the alleged interference." Id.

Better Buffalo cites Kronos v. AVX Corp. for the proposition that a claim does not accrue until actual economic damages are suffered. See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94, 612 N.E.2d 289 (1993) ("Since damage is an essential element of the tort [of inducement of breach of contract], the claim is not enforceable until damages are sustained."). Based on Kronos, it argues that its claim only accrued on November 1, 2018, when it sold Alden Landings at less than half its appraised value. But Kronos is a case of tortious interference with contract, not with prospective business relations. While damages are an element of an interference-with-contract claim, they are not an element of a claim for tortious interference with prospective business relations. Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 727 (S.D.N.Y. 2014) ("[U]nder New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."). In a claim for tortious interference with prospective business relations, a claim arises when the injury to the prospective business relationship occurs. Thome, 70 A.D.3d at 108.

Here, the prospective business relationships in which the Village allegedly interfered were those that Better Buffalo had with two prospective buyers, the latter of

which signed a contract with a due-diligence period of 45 days on May 30, 2017. Thus, the injury to the business relationship occurred when the latter prospective contract was terminated, on July 14, 2017, at the latest.[3]

Better Buffalo argues that its complaint also alleges continuing "wrongful acts of interference" until November 1, 2018. (Docket No. 20 at p. 19; Complaint, ¶¶ 35, 63, 69, 77-78.) But Better Buffalo's complaint does not allege sufficient facts to allow this Court to find that its claim arose after the end of the second contract's due diligence period. Better Buffalo alleges that the Village "intentionally and repeatedly wrongfully interfered with Better Buffalo's attempts to sell Alden Landings for the purposes of inflicting harm upon Better Buffalo." (Complaint, ¶ 37.) And it argues in response to the Village's motion that the two prospective contracts it describes are merely examples of the Village's ongoing tortious conduct. (Docket No. 20 at pp. 18-19.) But it does not provide any facts making it plausible that such prospective business relationships existed, nor does it allege that the Village had contact with any other potential purchasers. Alleging that the Village generically "interfered" is wholly conclusory and insufficient to state a claim for interference with prospective business relations.

Because any injury to Better Buffalo was sustained, at the latest, on July 14, 2017, Better Buffalo had to file its notice of claim within 90 days. Because it failed to do so, its tort claim against the Village does not conform to New York's municipal liability law, and must be dismissed. Hardy, 164 F.3d at 794.

Because this Court is dismissing Better Buffalo's claim for tortious interference with

---

[3] This Court assumes that Better Buffalo is not alleging that the Village induced the potential purchaser to breach a contract with Better Buffalo after the end of the due-diligence period, in which case this would be a claim for tortious interference with an existing contract. Both parties cite law related to a claim for tortious interference with prospective business relations, and the Court has analyzed Better Buffalo's claim as such.

prospective business relations on this basis, it will not discuss the parties' arguments concerning whether Better Buffalo alleges sufficiently "wrongful" conduct to state a claim against the Village, or whether the Village has immunity for its acts.

**F.   Better Buffalo sufficiently raises an as-applied vagueness challenge to Village Code §131, but its facial challenge fails.**

The Village argues that Better Buffalo has not stated a claim that Village Code § 131 is unconstitutionally vague. Better Buffalo argues that it incurred costs trying to comply with the ordinance's vague drainage requirements and that the ordinance's vagueness allowed the Village to enforce it arbitrarily against Better Buffalo. The complaint appears to encompass both the versions of Village Code § 131 in effect during the majority of the events described in the complaint, and the amended version that went into effect on October 25, 2018. (Id.)

**1.  Rules**

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Among the most fundamental protections of due process is the principle that "'[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of ... statutes. All are entitled to be informed as to what the State commands or forbids.'" Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y., 660 F.3d 612, 620–21 (2d Cir. 2011) (quoting Cramp v. Bd. of Pub. Instruction, 368 U.S. 278, 287, 82 S. Ct. 275, 7 L. Ed. 2d 285 (1961) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939)).

Regulations need not achieve "meticulous specificity," which would come at the cost of "flexibility and reasonable breadth." Betancourt v. Bloomberg, 448 F.3d 547, 552

(2d Cir. 2006) (citing Grayned, 408 U.S. at 110). Rather, they can "satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require." Rock of Ages Corp. v. Sec'y of Labor, 170 F.3d 148, 156 (2d Cir. 1999). "In any vagueness case, then, the challenger can prevail by showing that the statute either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or 'authorizes or even encourages arbitrary and discriminatory enforcement.'" Copeland v. Vance, 893 F.3d 101, 110 (2d Cir. 2018), cert. denied, 139 S. Ct. 2714, 204 L. Ed. 2d 1123 (2019) (quoting Hill v. Colorado, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)).

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). Courts impose a "more stringent vagueness test" to laws that inhibit the exercise of constitutionally protected rights, and to laws that provide for criminal penalties. Id. at 498–99. "'[E]conomic regulation is subject to a less strict vagueness test' than is legislation regulating noncommercial conduct." Betancourt v. Bloomberg, 448 F.3d 547, 552 (2d Cir. 2006) (quoting Hoffman Estates, 455 U.S. at 498)).

A vagueness challenge to an ordinance can be as-applied or facial. An as-applied claim is limited to plaintiff's particular case, and asserts that the plaintiff has been harmed by enforcement of a vague ordinance. For an as-applied challenge, a plaintiff must allege that the statute in question provided insufficient notice that the behavior at issue was

prohibited and that any prior enforcement action against it was unconstitutional. Dickerson v. Napolitano, 604 F.3d 732, 745 (2d Cir. 2010). A party can state a claim by alleging that it suffered a financial loss as a direct result of the unconstitutional enforcement of a law. Cunney v. Bd. of Trustees of Vill. of Grand View, 56 F. Supp. 3d 470, 490–91 (S.D.N.Y. 2014). To have standing for such a claim, it is sufficient to allege economic losses suffered in an attempt to comply with the statute. Id.

A claim is facial if it "challenges application of the law more broadly." John Doe No. 1 v. Reed, 561 U.S. 186, 194, 130 S. Ct. 2811, 177 L. Ed. 2d 493 (2010). A facial challenge is difficult to mount successfully because "the challenger must show that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone." Copeland v. Vance, 893 F.3d 101, 110–11 (2d Cir. 2018), cert. denied, 139 S. Ct. 2714, 204 L. Ed. 2d 1123 (2019). In other words, "to succeed on a facial challenge, the challenger must establish that no set of circumstances exists under which the [laws] would be valid." Id. (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)).

Facial claims are "disfavored" because they "often rest on speculation," flout the "fundamental principle of judicial restraint" that courts should avoid unnecessary constitutional adjudication[,] and "threaten to short circuit the democratic process." Copeland, 893 F.3d at 111 (citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008)).

Better Buffalo is bringing both an as-applied and a facial challenge to § 131. For its as-applied claim, Better Buffalo alleges that the statute's lack of a definition of adequate drainage harmed Better Buffalo, and caused it to incur costs in trying to comply

with the village's arbitrary application. As for a facial challenge, Better Buffalo alleges that § 131 as amended is unconstitutional because it exceeds the grant of authority from New York Village Law § 7-700, which permits villages to make laws ensuring "health, welfare and safety." (Complaint, ¶ 63.)

### 2. Better Buffalo's as-applied challenge

Better Buffalo does not specifically allege in its complaint that it was unable to understand what the Village meant by "drainage." But the complaint relates that Better Buffalo was informed of the existence of drainage issues, "tried to make improvements," tried to get an easement to allow drainage pipes to cross neighboring properties, incurred significant costs in attempting to comply with § 131, and was ultimately denied a license renewal based on the Village's application of § 131. Fundamental to Better Buffalo's complaint is the assertion that there was no actual drainage problem at Alden Landings. Better Buffalo also alleges that the party that purchased Alden Landings from it was granted a license despite the existence of identical drainage conditions.  In essence, Better Buffalo is claiming that the Village found drainage at Alden Landings "inadequate" while Better Buffalo owned it, yet "adequate" under the same conditions, when Better Buffalo's successor owned it. Taken as true, these allegations suggest that § 131 provided a standard that was vague enough to allow the Village to apply it differently to different parties.

At the motion to dismiss stage, this Court finds that Better Buffalo has alleged sufficient facts to state an as-applied vagueness challenge. Further factual development will bring out much-needed facts related to this claim, including the actual drainage conditions at Alden Landings during the relevant time periods. This Court acknowledges

that perfect precision in statutory language is not required, and that it must apply a less stringent test to this ordinance than to regulation of constitutionally protected activities or activities that could lead to criminal penalties. Still, due process requires that a party be able to understand what is expected of him and to comply with the statute. This Court finds that Better Buffalo has sufficiently alleged that §131 was unconstitutionally vague as applied to it.

### 3. Better Buffalo's facial challenge

Better Buffalo alleges that § 131 as amended is unconstitutional because it exceeds the grant of authority from New York Village Law § 7-700, which permits villages to make laws ensuring "health, welfare and safety." (Complaint, ¶ 63.) Better Buffalo argues that § 131 is not related to any of these government interests. (Docket No. 20 at p. 25.) It appears to claim that requiring adequate drainage on roads in a mobile home park is an unreasonable regulation not adopted to cure any evil, but rather represents an "arbitrary interference with [its] right to conduct [its] own private business as [it] see[s] fit." (Docket No. 20 at p. 26, citing Boxer v. Town of Harrison, 175 Misc. 249, 252-53 (Sup. Ct. Westchester Cty. 1940). It also appears argue that the requirement in the amended § 131 that mobile homes be vacated and moved within 20 days of a license denial is unreasonable.

As an initial matter, this Court cannot see, considering both common sense and the presumption of legitimacy due to local ordinances, how requiring drainage in a mobile home park could be unrelated to—or beyond the Village's authority to make rules protecting—public health and safety. Simon v. Town of Dryden, No. 88-CV-965, 1989 WL 103743, at *3–4 (N.D.N.Y. Aug. 28, 1989) ("Given that federal courts do not sit as zoning

appeal boards, great deference must be accorded legislative determinations of a community's needs and its responses to problems, potential or otherwise.").

Further, this Court finds that Better Buffalo lacks standing to bring a challenge to § 131 as it was amended on October 25, 2018. Better Buffalo sold Alden Landings on November 1, 2018, and since then has not been subject to its regulations. It does not claim that it has been, or will be, harmed by the application of the amended statute, nor that any declaration by this Court of the statute's facial invalidity would redress such injury.

For the foregoing reasons, this Court will dismiss Better Buffalo's facial challenge to § 131 as amended. But because this Court finds that Better Buffalo has stated an as-applied challenge, the Village's motion to dismiss that cause of action will be denied.

## G.   Better Buffalo's procedural due process claims fail.

The Village argues that Better Buffalo's due process claims—both procedural and substantive—warrant dismissal because Better Buffalo has not alleged a protected property interest that would give rise to such a claim, nor has it alleged that it did not receive the process it was due before being denied a renewal of its license. The Village also argues that the availability of an Article 78 proceeding to address any deprivation forecloses a constitutional claim arising from that denial. Better Buffalo argues that it had a protected property interest in the issuance of the mobile home license, and that it lacked notice of the standards required, lacked the opportunity to contest the Village's enforcement, and lacked a remedy after suffering the deprivation.

### 1.   Rules

The Fourteenth Amendment to the United States Constitution guarantees that no person shall be deprived "of life, liberty or property, without due process of law." U.S.

Const. amend. XIV, § 1. "The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (quoting Mathews v. Eldridge, 424 U.S. 319, 348–49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)).

To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, courts (1) "identify the property interest involved," and (2) "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." O'Connor v. Pierson, 426 F.3d 187, 196 (2d Cir. 2005) (citing Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 212 (2d Cir. 2003)).

"Property interests …are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972).

The Second Circuit applies a "clear entitlement" analysis to determine whether a landowner has a constitutionally cognizable property interest in the benefit sought. See Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir.1995); accord Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir.1995). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more

than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

A landowner has a clear entitlement to the land-use benefit sought where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006) (citing Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985)).

The inquiry "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." Zahra, 48 F.3d at 680.

If federal courts are not to become zoning boards of appeals, the entitlement test—certainty or a very strong likelihood of issuance—must be applied with considerable rigor. RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 918 (2d Cir. 1989). Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. Id.

Thus, in Walz, the plaintiff had a clear entitlement to a permit where "so long as an application form state[d] 'the nature, location, extent and purpose of the proposed excavations,' the Superintendent of Highways ha[d] no discretion to decline to issue a permit." Walz, 46 F.3d at 168. In Yale Auto Parts, however, where the zoning board of appeals was required to take into account "the nature and development of surrounding property; the proximity of churches, schools, hospitals, public buildings or other places of public gathering; the sufficiency in number of other such yards or businesses in the vicinity; whether or not the location is within a residential district ...; [and] the health, safety

25

and general welfare of the public ...," among other factors, the plaintiff had no entitlement

to a permit approving the location of its auto body shop. <u>Yale Auto Parts</u>, 758 F.2d at 59.

### 2. Better Buffalo did not have an enforceable property interest in the issuance of a mobile home park license.

The Village argues that Better Buffalo did not have a clear entitlement to a mobile

home park license. It points to code provisions that preserve a high level of discretion for

Village decisionmakers. Better Buffalo does not address the question of the Village's

discretion, but rather emphasizes its expectancy of the license renewal and the

investments it made in expectation of receiving a renewal.

This Court has before it three versions of Alden Village Code § 131, as amended

in 2003 (Docket No. 15-9), 2016 (Docket No. 15-8), and in October 2018 (Docket No. 15-

7.) All three versions contain the same requirements for renewing a mobile home park

license. Under § 131-9, a mobile home park license is valid from September 1 of the

current calendar year, and expires annually on August 31. § 131-9(B). A licensee is

therefore required to reapply annually for its license.  Code § 131-9 states that the Village

clerk "shall issue a license" when an applicant has submitted its application and paid its

fee. But before the license can issue, the application must also be approved by the Erie

County Department of Health, the Village Code Enforcement Officer, the Village's

Superintendent of Public Works, and the Village Engineer. § 131-9(B)(3)-(5). Renewal

also requires approval by the Board of Trustees, who must hold a hearing before deciding

on the license application. At this hearing, the Board of Trustees must "accept comments

for or against such approval or renewal." § 131-9(G).

There is nothing automatic about the issuance of a license.  An applicant must gain

approval from multiple entities and be considered by the Board of Trustees, which is to

26

weigh public comments in its decisionmaking. This latter factor alone points to a grant of discretion to the Board of Trustees.

Better Buffalo argues that it alleges entitlement to a license renewal because it "expected" a renewal and relied on that expectation to make improvements. (Docket No. 20 at p. 31.) But this does not address the threshold issue of whether the issuance of the expected license was a "near certainty." Given the number of officials whose approval was required, and the need for the Board of Trustees to hold a hearing, receive public comments and, presumably, deliberate on the merits of the application, the issuance of the license was not a near certainty. This Court finds, therefore, that Better Buffalo did not have an enforceable property interest in the renewal of its mobile home park license.

Because this Court finds that Better Buffalo has not met the threshold of pleading a protected property interest, it will not consider Better Buffalo's arguments regarding whether it received the process it was due.  See, e.g., Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006) ("Because we hold that [the plaintiff] lacks a valid property interest in the granting of the petition, we do not consider the second step of the analysis here."); HB v. Monroe Woodbury Cent. Sch. Dist., No. 11–CV–5881, 2012 WL 4477552, at *8 (S.D.N.Y. Sept. 27, 2012) (noting that if a plaintiff satisfies the "threshold requirement" of demonstrating a constitutionally protected property interest, "a court may then decide whether the deprivation of the protected interest is a violation of substantive due process").

## H.   Substantive due process claim

### 1.  Rules

Substantive due process is an outer limit on the legitimacy of governmental action.

27

Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action, but only "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Id. In other words, "[s]ubstantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011) (citing Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks omitted)).

As with procedural due process claims, the threshold issue here is whether a plaintiff can assert an enforceable interest. DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 132 (2d Cir.1998) ("[T]he threshold inquiry in a substantive due process analysis is whether the property interest claimed rises to the level of a property interest cognizable under the substantive Due Process Clause."). Because this Court finds, as above, that Better Buffalo did not have an enforceable property interest in the issuance of the mobile home park license, it need not consider whether the denial of that license was so gross an abuse of governmental authority as to shock the conscience.

I.    **Equal protection claim**

The Village argues that dismissal is warranted because Better Buffalo has not alleged that it was treated differently from a similarly situated group, or that the Village acted with no rational basis. The Village also argues that this claim should be dismissed because it was not named as a cause of action in Better Buffalo's complaint. Better Buffalo argues that it was treated differently from the preceding and succeeding owners

of Alden Landings, both of whom were issued mobile home permits despite the ongoing drainage issues.

As an initial matter, Better Buffalo does not need to have named its cause of action to state a claim. If the complaint alleges sufficient facts, taken as true, to state a claim for violation of equal protection, it will survive the Village's motion to dismiss. See Iqbal, 556 U.S. at 678. As discussed below, this Court finds that Better Buffalo's complaint contains enough factual matter taken as true to suggest that Better Buffalo was treated differently from other similarly situated property owners. Its failure to refer specifically to an equal-protection cause of action in its complaint will not be fatal to its claim.

### 1. Rules

The Equal Protection Clause requires that the government treat all similarly situated people alike. Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Id. When a plaintiff does not allege membership in a specific class, its claims will be assessed under either a selective enforcement or a "theory of one" theory.

### a. Selective Enforcement

To prevail on a claim of selective enforcement, plaintiffs in the Second Circuit must allege both (1) that they were treated differently from other similarly situated individuals,

and (2) that such differential treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " Harlen, 273 F.3d at 499 (citing LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir.1994)).

A plaintiff can survive a motion to dismiss if he or she alleges facts suggesting that a defendant acted with malice. McCormick v. Town of Clifton Park, No. 05-CV-0694, 2006 U.S. Dist. LEXIS 32813, at *17 (N.D.N.Y. May 23, 2006) (plaintiffs' equal protection claim survived motion to dismiss where it alleged "the defendants acted with impermissible motive and animus in order to punish them for their business activities" and provided "allegations in support [of] such an inference, which must be accepted as true on a motion to dismiss."). But conclusory allegations will not suffice. See Cathedral Church of The Intercessor v. Inc. Vill. of Malverne, 353 F. Supp. 2d 375, 383 (E.D.N.Y. 2005) ("Plaintiffs merely state in a conclusory fashion that '…the defendants' discriminatory treatment was malicious and made in bad faith on account that the Church was not a mainstream, national denomination and it attracted a large number of worshipers from outside the Village.' However, Plaintiffs make no allegations to support this contention.").

This Court finds, first, that Better Buffalo has sufficiently alleged different treatment from other similarly situated mobile home park operators. Better Buffalo alleges that it was treated differently from both the prior owners from whom it bought Alden Landings, and the subsequent owners to whom it sold Alden Landings. See 545 Halsey Lane Properties, LLC v. Town of Southampton, 39 F. Supp. 3d 326, 345 (E.D.N.Y. 2014), on reconsideration in part, No. 14-CV-800 ADS AYS, 2015 WL 1565487 (E.D.N.Y. Apr. 8, 2015), on reconsideration, No. 14-CV-800 ADS AYS, 2015 WL 2213320 (E.D.N.Y. May

8, 2015) (one of the Plaintiff's predecessors-in-title who was permitted to construct a single-family residence on the Property notwithstanding the Town Code's prohibition of the same was a proper comparator); see also Ossler v. Village of Norridge, 557 F. Supp. 219, 223 (N.D. Ill. 1983) (upholding equal protection claim where defendants denied the plaintiff's rezoning but rezoned the property for a later owner).

Here, both the prior and subsequent owners were granted licenses, while Better Buffalo was not. Better Buffalo alleges that drainage issues remained the same for all three owners.  The Village may ultimately be able to demonstrate that these three entities were not in fact similarly situated, or that the drainage issues were not the same over the entire period. But these arguments would be factually based, and cannot be resolved on a motion to dismiss. See 545 Halsey Lane, 39 F. Supp. 3d at 346.

As for the malice or bad faith required for a selective enforcement claim, Better Buffalo does more than simply state in a conclusory fashion that the Village acted with malice or bad faith. It alleges that the Village informed Better Buffalo that it wanted Better Buffalo to redevelop Alden Landings, and when Better Buffalo failed to do so, the Village retaliated by enforcing the drainage requirements. The Village argues that, because the Village had another motive, i.e., redevelopment, it cannot have acted with the "sole" motive of harming Better Buffalo. But taking the complaint as true, this Court finds that Better Buffalo has alleged that the Village, angered by Better Buffalo's failure to redevelop Alden Landings, maliciously denied Better Buffalo's license application. At this stage, Better Buffalo has alleged bad faith sufficiently to survive the Village's motion to dismiss.

### b.  Class of One

A plaintiff can allege "class of one" equal-protection claim where the plaintiff

alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000).

A zoning board's decision can be considered irrational only when the board acts "with no legitimate reason for its decision." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (citing Crowley v. Courville, 76 F.3d 47, 52 (2d Cir.1996)).

Courts in this circuit have held that an equal protection claim will survive a motion to dismiss if the complaint alleges that a defendant's actions were irrational, and the complaint provides sufficient allegations, which, taken as true, would support this claim. Lexjac, LLC v. Beckerman, No. 07-CV-4614 (JS)(ARL), 2008 WL 11313761, at *8 (E.D.N.Y. Sept. 30, 2008) (citing Cathedral Church of the Intercessor v. Incorporated Vill. of Malverne, No. 02-CV-2989, 2006 U.S. Dist. LEXIS 12842, at *14 (E.D.N.Y. Mar. 6, 2006).

Here, at the motion-to-dismiss stage, this Court must take all Better Buffalo's allegations as true. Better Buffalo has alleged that (a) there was no drainage problem at Alden Landings, and  (b) it was denied a permit when others received a permit. If indeed there is no drainage problem at Alden Landings, and if in fact the drainage situation remained the same for the prior owner, Better Buffalo, and the subsequent owner—facts which can be developed with discovery—then Better Buffalo has sufficiently alleged that the Village had no rational basis to deny Better Buffalo the permit. The Village's motion to dismiss will therefore be denied as to Better Buffalo's equal protection claim.

## J.    New York Constitutional Claims

Better Buffalo brings its claims under the New York Constitution as well as the

United States Constitution. A cause of action for damages arising from violations of the New York Constitution is a "narrow remedy" available only when "necessary to effectuate the purposes of the State constitutional protections [that the] plaintiff invokes" or "appropriate to ensure full realization of [the plaintiff's] rights." Martinez v. City of Schenectady, 97 N.Y.2d 78, 735 N.Y.S.2d 868, 761 N.E.2d 560, 563 (2001). "Thus, the state constitutional tort is usually available only in cases in which a plaintiff … has no alternative remedy." Biswas v. City of New York, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (citing Lyles v. State, 2 A.D.3d 694, 770 N.Y.S.2d 81, 82 (App. Div. 2003), aff'd on other grounds, 3 N.Y.3d 396, 787 N.Y.S.2d 216, 820 N.E.2d 860 (2004)); Wahad v. FBI, 994 F. Supp. 237, 238–40 (S.D.N.Y.1998). Actions for damages at common law and under § 1983 are both considered adequate alternative remedies that preclude the assertion of a claim for damages under the state Constitution. Hershey v. Goldstein, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ("District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983.").

In this case, Better Buffalo has remedies under both § 1983 and the New York Constitution for its void-for-vagueness and equal-protection claims. Better Buffalo has a remedy for any injuries resulting from the Village's allegedly wrongful conduct, and its state constitutional tort claims on these bases are redundant. These claims will therefore be dismissed.

Further, this Court, having dismissed Better Buffalo's federal due process claims, declines to exercise supplemental jurisdiction over its New York constitutional claims arising from the same facts. See 28 U.S.C § 1367(c)(3) (A district court "may decline to

exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction."); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Better Buffalo's due process claims arising under the New York Constitution will therefore be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the Village's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Village's motion is granted as to Better Buffalo's claim under New York tort law because Better Buffalo failed to comply with the notice and filing requirements of New York General Municipal Law § 50-e. The Village's motion is also granted as to Better Buffalo's procedural and substantive due-process claims arising under the Fourteenth Amendment because Better Buffalo has not alleged an enforceable property interest in the issuance of the mobile home park license.  Further, the Village's motion is granted as to any claim Better Buffalo brings that Village Code § 131 is unconstitutional on its face.

The Village's motion is denied as to Better Buffalo's claim that Village Code § 131 is unconstitutional as applied, because Better Buffalo has sufficiently alleged that the statute is vague and was arbitrarily enforced. The Village's motion is further denied as to Better Buffalo's claim arising under the Equal Protection clause of the Fourteenth Amendment, because Better Buffalo has sufficiently alleged that it was treated differently from its predecessor and successor and that the Village acted with malice and with no

rational basis.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 15) is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated:          November 30, 2020
                Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge